IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BENEFIT COSMETICS LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20-cv-02552 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| THE PARTNERSHIPS AND ) | |
| UNINCORPORATED ASSOCIATIONS ) | |
| IDENTIFIED ON SCHEDULE "A," ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Benefit Cosmetics LLC ("Benefit") owns several trademarks for its beauty products. It brought the present trademark infringement action against dozens of defendants, named in an attached Schedule "A," that allegedly operated online stores selling infringing and counterfeit products bearing Benefit's trademarks. Only one Defendant, Oxygen Ocean, appeared to defend itself. However, Oxygen Ocean was ultimately voluntarily dismissed from the action pursuant to a settlement agreement. Now, Oxygen Ocean, through its sole proprietor Louai Saleh Taan, moves *pro se* to withdraw from and set aside its settlement agreement with Benefit (Dkt. No. 69),[1] on the ground that Taan claims the case was settled without his knowledge by an attorney who did not have authority to settle the matter on his behalf. For the reasons that follow, Oxygen Ocean's motion is denied.

---

[1] After filing its initial motion, Oxygen Ocean moved for leave to file an amended motion to withdraw and set aside settlement agreement (Dkt. No. 72), which the Court granted (Dkt. No. 76). The motion for leave to amend attached a proposed amended motion as Exhibit A, which the Court treats as the operative motion to withdraw.

**BACKGROUND**

Benefit is a beauty company that manufactures and sells cosmetics, among other products. Its cosmetics incorporate a variety of common-law and federally-registered trademarks. According to Benefit, the defendants listed in Schedule "A" filed along with its complaint are individuals and business entities that operate online stores offering for sale counterfeit Benefit products to consumers in the United States, including Illinois. Benefit brought the present action against those defendants asserting claims for trademark infringement and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a). Shortly after initiated the case, Benefit successfully moved *ex parte* for a temporary restraining order that took down Defendants' online stores and froze their assets. (Dkt. Nos. 13, 27.) Later, Benefit obtained a preliminary injunction that kept in place the injunctive relief granted in the temporary restraining order. (Dkt. Nos. 38, 44.)

On August 20, 2020, shortly after entry of the preliminary injunction, Louai Saleh Taan filed a submission setting forth his defense to Benefit's claims against Oxygen Ocean. (Dkt. No. 46.) Taan represented to this Court that he is a citizen of Jordan and the sole proprietor of Oxygen Ocean. While he admitted that Oxygen Ocean sold about 100 counterfeit Benefit products, he claimed that he believed at the time that the products were authentic. Once he learned of the injunctive relief entered against Oxygen Ocean, Taan reached out to Benefit to negotiate a settlement but the parties were unable to come to an agreement.

Around that time, Benefit was negotiating settlements with other Defendants and had moved for entry of default and default judgment as to the remainder, including Oxygen Ocean. (Dkt. No. 50.) Taan appeared before this Court at a telephonic status hearing held on September 10, 2020, where he explained that the freeze on Oxygen Ocean's Amazon account was damaging

his business and he wanted to do what was necessary to lift the freeze. The Court stated that it would recruit a lawyer for Taan and Oxygen Ocean through the Northern District of Illinois's Settlement Assistance Program, who would represent them for the limited purpose of settlement negotiations. Further, the Court denied Benefit's motion for entry of default as to Oxygen Ocean and stayed Oxygen Ocean's obligation to answer the complaint to give the parties the opportunity to discuss settlement.

Benefit filed a notice of voluntary dismissal as to Oxygen Ocean on October 8, 2020. Taan did not appear at an October 15, 2020 hearing addressing Benefit's pending for motion for entry of default and default judgment. During the hearing, the Court observed that Taan had not availed himself of the services of the Settlement Assistance Program. Counsel for Benefit explained that Taan had settled the matter but apparently used an attorney not associated with the Settlement Assistance Program. The Court then granted Benefit's motion for entry of default and default judgment as to the other Defendants that had not settled and closed the case. (Dkt. Nos. 57, 58.)

The case remained closed until February 5, 2021, when Taan entered a *pro se* appearance and filed a motion to set aside default and default judgment. (Dkt. Nos. 59, 60.) The Court held a hearing on the motion on February 10, 2021. At the hearing, the Court explained to Taan that there was no default judgment to be vacated as to Oxygen Ocean because it had been voluntarily dismissed pursuant to Taan's settlement agreement with Benefit. However, Taan objected to the settlement agreement and claimed that he was "misguided" into entering it without the assistance of counsel from the Settlement Assistance Program. In response, Benefit's counsel explained that they had worked with an attorney named Lilian Khosravi to reach a settlement agreement with Taan. Taan denied that Khosravi represented him and claimed that he never signed a settlement agreement with Benefit. Consequently, the Court reinstated the case for the limited purpose of

3

resolving the validity of the putative settlement agreement. Further, the Court directed the parties to meet and confer to see if they could resolve the dispute regarding the settlement agreement on their own.

The parties reported back to the Court at a status hearing held on March 11, 2021. Benefit took the position that the settlement agreement was valid whereas Taan denied entering into an enforceable settlement agreement. Benefit subsequently filed with the Court the document it described as the operative settlement agreement. (Dkt. No. 66.) That document, which included a signature dated September 23, 2020 above a line with Taan's printed name, provided that Taan and Oxygen Ocean would, among other things, pay $20,000 to settle Benefit's claims against Oxygen Ocean. Taan responded by filing the present motion to withdraw from and set aside the settlement agreement. In his motion, Taan first explained that while he had reached out to Khosravi, he had only given her authority to manage his communications with Benefit and had not authorized her to settle the case. Further, according to Taan, Khosravi had expressly told him that she was a California attorney that could not represent him in an Illinois case. Taan also claimed that he did not know how the settlement agreement filed by Benefit was procured and denied signing it. To that end, Taan submitted as an exhibit his signed government-issued photo ID so the Court could compare the signature on it to the signature on the settlement agreement.

In response to Taan's motion, Benefit submitted a declaration that attached as exhibits Benefit's counsel's various communications with both Khosravi and Taan. (Martin Decl., Dkt. No. 71.) Those exhibits show that Khosravi first contacted Benefit's counsel on July 26, 2020, claiming to represent Taan for settlement purposes. (Martin Decl., Ex. 1, Dkt. No. 71-1.) Then, on October 4, 2020, Taan emailed Benefit's counsel to follow up on "the settlement agreement of 20k with oxygen ocean," noting that he "didn't see any changes or deduction from our Amazon

account." (Martin Decl., Ex. 3, Dkt. No. 71-3.) Ten days later, Khosravi sent an email to Benefit's counsel expressing concern that she had not received a copy of the settlement agreement signed by Benefit or any indication that Benefit was "taking the proactive steps to withdraw the agreed settlement amount from Amazon." (Martin Decl., Ex. 4, Dkt. No. 71-4.) Sometime after this email, Khosravi received a settlement agreement signed by Benefit. Yet, over the next two months, emails from both Khosravi (sometimes cc'ing Taan) and Taan indicated that the freeze on Oxygen Ocean's account remained in place. (*Id.*) Between mid-December and early January, Taan sent Benefit's counsel several emails complaining that Amazon had taken no action to either pay Benefit the settlement funds or to lift the freeze on his account and requesting Benefit's counsel's assistance in speeding up the process. (Martin Decl., Exs. 5–6, Dkt. Nos. 71-5–71-6.) Finally, on January 27, 2021, Benefit's counsel received an email from an attorney named Solomon Barnes, who stated that $20,000 was an "outrageous settlement amount" and requested that the settlement agreement be set aside. (Martin Decl., Ex. 7, Dkt. No. 71-7.)

      When Taan next appeared before the Court at a May 6, 2021 status hearing, he asserted that the emails submitted by Benefit, purportedly sent by him to Benefit's counsel, did not prove that there was an enforceable settlement agreement. Specifically, he emphasized that those emails were sent from the email address smartmovetech@gmail.com rather than the email address at which Taan was served in this action, online2sell4you@gmail.com. Thus, according to Taan, Benefit's counsel had no reason to believe that they were actually communicating with Taan in their email exchanges with the smartmovetech@gmail.com address. In response to the Court's questioning, Taan represented that he was not associated with the smartmovetech@gmail.com address and had not received copies of the emails submitted by Benefit. Following the hearing,

5

the Court took Taan's motion to withdraw from and set aside the settlement agreement under advisement without further briefing or an evidentiary hearing.

## DISCUSSION

"A settlement agreement is a contract and as such, the construction and enforcement of settlement agreements are governed by principles of local law applicable to contracts generally." *Laserage Tech. Corp. v. Laserage Lab'ys, Inc.*, 972 F.2d 799, 802 (7th Cir. 1992). In Illinois, a settlement agreement is enforceable "where there has been an offer, an acceptance, and a meeting of the minds or mutual assent as to all material terms." *Desimone v. Danaher Corp.*, No. 17-cv-5232, 2018 WL 4181483, at *4 (N.D. Ill. Aug. 31, 2018); *see also Allscripts Healthcare, LLC v. Etransmedia Tech., Inc.*, 448 F. Supp. 3d 898, 904 (N.D. Ill. 2019) ("If no party raises a choice of law issue, the court applies the law of the forum state." (internal quotation marks and alteration omitted)). Where the parties in a case pending before it agree to settle, a district court "possess[es] the inherent or equitable power" to summarily enforce that agreement. *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995). But where there is a material dispute as to the existence or terms of a settlement agreement, the district court should conduct an evidentiary hearing. *Id.*

Here, Benefit has presented a written settlement agreement with definite terms, ostensibly signed by Taan. Taan's only objection is that he did not agree to the settlement and does not know where the document came from; he does not otherwise contest its terms. He asserts that Khosravi acted without authorization to settle the matter and denies that his signature on the agreement is authentic. And although the emails introduced by Benefit appear to demonstrate that Taan was aware that Khosravi was negotiating on his behalf and knew of the existence and terms of the settlement, Taan denies sending emails from the smartmovetech@gmail.com address. Taan seemingly asserts that the emails were sent by an unknown imposter who, for some reason,

6

conspired with Khosravi to execute a fraudulent settlement agreement. On its face, Taan's story sounds implausible. And upon closer inspection, it completely falls apart.

First, the Court addresses Taan's contention that he had never seen nor signed the settlement agreement before it was executed. The signature on Taan's photo ID and the signature on the settlement agreement exhibit significant differences. Standing alone, the dissimilarities might warrant an evidentiary hearing. However, Taan's emails demonstrate that he knew of the settlement agreement and its material terms. In early October 2020, around two weeks after the agreement was ostensibly signed, Taan sent Benefit's counsel an email following up on "the settlement agreement of 20k." (Martin Decl., Ex. 3.) Thus, Taan both recognized the existence of a settlement agreement, including the fact that it required Taan and Oxygen Ocean to pay Benefit $20,000. And after Benefit executed the agreement, Taan sent several emails that, far from disaffirming the agreement, indicated that he was anxious to see Benefit withdraw the $20,000 from his account so that the freeze on it would be lifted. (Martin Decl., Exs. 5–6.)

These emails contradict Taan's representation that he was not aware of the settlement agreement at the time of its execution and strongly suggest that his signature on the agreement is authentic. At minimum, they demonstrate a meeting of the minds between Taan and Benefit as to the material terms of the agreement: Taan, on behalf of Oxygen Ocean, would pay Benefit $20,000 and Benefit would drop its claims against Oxygen Ocean and lift its freeze on its account. *See Zendejas v. Reel Cleaning Servs., Inc.*, No. 05 C 6933, 2009 WL 2431299, at *9 (N.D. Ill. Aug. 6, 2009) ("Courts within the Seventh Circuit have enforced settlement agreements when the parties agreed on the amount to be paid, although other terms had not been agreed upon."); *cf. Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 374 (7th Cir. 1992) ("The fact that a formal written document is anticipated does not preclude enforcement of a specific preliminary promise."). And

7

because Taan repeatedly inquired as to when Benefit would withdraw its payment from the account and lift the freeze, he believed that the agreement final and enforceable.

Taan asserts that these emails sent from smartmovetech@gmail.com were not sent by him and therefore do not show that he settled Benefit's claims. But Taan's own emails to this Court, included in the Appendix to this decision, reveal that Taan lied in open court when he said that he had nothing to do with the smartmovetech@gmail.com address. When Taan first appeared in this action in August 2020, the Court's Courtroom Deputy sent preliminary communications to him at online2sell4you@gmail.com. On August 18, 2020 and August 20, 2020, Taan replied to the Courtroom Deputy from the online2sell4you@gmail.com address. In both emails, Taan apologized for his delayed response, explaining "our main Amazon account email address is different, which is 'smartmovetech@gmail.com' and we rarely open this email, but will keep checking it regularly until case is finished." Thus, in August 2020, Taan informed the Court that his preferred email address was the same smartmovetech@gmail.com address from which he attempted to dissociate himself in open court in May 2021. Given that Taan has admitted to the Court that he controls the smartmovetech@gmail.com address, the Court concludes that there is no dispute that Taan was the individual communicating with Benefit's counsel from that address. Consequently, the Court finds that Taan himself entered into an enforceable settlement agreement with Benefit, as memorialized in the written agreement that Benefit submitted to this Court.

Having found that Taan himself agreed to settle with Benefit, Taan's arguments concerning Khosravi's authority to settle on his behalf are irrelevant. Normally, Illinois requires an attorney to have a client's express authorization to settle a lawsuit. *Blutcher v. EHS Trinity Hosp.*, 746 N.E.2d 863, 868 (Ill. App. Ct. 2001). But Taan's signature on the written settlement agreement and subsequent manifestations of assent to its material terms make "the question of

8

whether [Khosravi] had authority to settle a nonissue; the client had himself settled the case, not the agent." *Kazale v. Flower*, 541 N.E.2d 219, 229 (Ill. App. Ct. 1989). In any case, Khosravi appears to have acted with Taan's authorization, as she cc'd Taan on many of her emails to Benefit's counsel, and Taan cc'd her on many of his emails to Benefit's counsel. Further, Taan's actions served to ratify the settlement agreement. "In general, a principal ratifies a contract made by an agent when, with knowledge of all the material facts, [he] either expresses [his] assent to the contract or fails to disaffirm the contract within a reasonable time and accepts benefits under it." *Hardin, Rodrgiuez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.*, 962 F.2d 628, 634 (7th Cir. 1992). Here, Taan ratified the settlement agreement by indicating his awareness of its material terms, repeatedly requesting that Benefit implement its material terms, and making no attempt to disaffirm it until months after its execution.

Based on the record, the Court concludes that Taan entered into an enforceable settlement agreement with Benefit. It would appear from his emails that Taan at some point became frustrated by Benefit's delay in effectuating one of the agreement's terms—the unfreezing of Oxygen Ocean's Amazon account—and therefore sought to repudiate the agreement. But buyer's remorse cannot render a settlement agreement unenforceable. *Newkirk v. Village of Steger*, 536 F.3d 771, 775 (7th Cir. 2008). If a party "who has previously authorized a settlement changes his mind, that party remains bound by the terms of the agreement." *Glass v. Rock Island Refin. Corp.*, 788 F.2d 450, 454 (7th Cir. 1986) (internal quotation marks and alteration omitted). For that reason, the Court denies Oxygen Ocean's motion to withdraw and set aside the settlement agreement.

The Court next turns to Benefit's request that the Court use its inherent authority to award it attorney's fees due to Taan's dishonest and contradictory arguments for invalidating the

9

settlement agreement. "Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)). "That authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)). Among the available sanctions is an award of attorney's fees in the form of an order "instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side." *Id.* But any such award must be compensatory rather than punitive; "the court can shift only those attorney's fees incurred because of the misconduct at issue." *Id.*

Before imposing sanctions under its inherent authority, a court first "must make a finding of bad faith, designed to obstruct the judicial process, or a violation of a court order." *Fuery v. City of Chicago*, 900 F.3d 450, 463–64 (7th Cir. 2018). As discussed above, the Court has already found that Taan lied in open court about his association with the smartmovetech@gmail.com email address. Unquestionably, Taan's reliance on a verifiable falsehood to try to create a dispute of fact frustrated the Court's ability efficiently and accurately to determine the enforceability of the settlement agreement. However, because attorney's fees imposed under a court's inherent power are compensatory, there must be "a causal link[] between the litigant's misbehavior and legal fees paid by the opposing party." *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1186. And here, Taan's falsehood came after briefing on his motion had closed and it did not cause Benefit to incur additional legal fees. Nonetheless, Taan's conduct is sanctionable and the Court could fashion an appropriate alternative sanction. *See, e.g.*, *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 797 (7th Cir. 2009) ("A district court's inherent power to sanction for violations of the

10

judicial process is permissibly exercised not merely to remedy prejudice to a party, but also to reprimand the offender and to deter future parties from trampling upon the integrity of the court." (internal quotation marks omitted)). While Taan's lie was a serious offense, because Taan is a *pro se* litigant whose case will be closed by the Court's present decision, the Court chooses instead to admonish Taan for lying in open court but declines to impose any further sanctions in connection with that lie.

Of course, Benefit made its request for attorney's fees before Taan lied about his email address based on Taan's general pattern of lies and contradictions in trying to invalidate the settlement agreement. While the Court agrees that Taan's representations have been vague and evasive, the Court cannot identify any other conduct that amounts to sanctionable bad faith. Instead, finding few legal or factual bases to invalidate the settlement agreement, Taan grasped for weak but not wholly frivolous arguments. Particularly given his *pro se* status, Taan's unsuccessful arguments do not warrant sanctions. And although some of his factual representations were suspicious, none were verifiably false. The Court therefore declines to impose sanctions under its inherent authority.

## CONCLUSION

For the foregoing reasons, Oxygen Ocean's motion to withdraw from and set aside settlement agreement (Dkt. No. 69) is denied.

ENTERED:

Dated: March 28, 2022

_____
Andrea R. Wood
United States District Judge